UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD NELSON and DOROTHY NELSON, | CASE NO. 01-282-DRH |
| Plaintiffs, | |
| v. | CLASS ACTION COMPLAINT |
| EDWARD K. DUNN, JR., | |
| Defendant. | |

Plaintiffs, Richard Nelson and Dorothy Nelson, sue Defendant, Edward K. Dunn, Jr., and allege:

### PARTIES

1. Plaintiffs are residents of Caseyville, Illinois. Plaintiffs are shareholders of the AIM Constellation Fund, Inc. ("Fund"), a mutual fund. The Fund is a registered investment company under the Investment Company Act of 1940 ("ICA").

2. Defendant is a resident of the State of Maryland and transacts business in this district. Defendant is and at all material times was a Director of the Fund. Defendant is sued both individually and in his capacity as a Director of the Fund.

### JURISDICTION AND VENUE

3. This action is brought pursuant to Section 12(b) of the Investment Company Act of 1940 ("ICA"), as amended, 15 U.S.C. § 80a-12(b).

4. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 80a-43 and 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 15 U.S.C. § 80a-43 and

28 U.S.C. § 1391(b)(2)-(3).

   6. All conditions precedent have been performed or have occurred.

## GENERAL ALLEGATIONS

   7. Section 12(b) of the ICA provides that "[i]t shall be unlawful for any registered [investment] company . . . to act as a distributor of securities of which it is the issuer, except through an underwriter, in the contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." The Securities and Exchange Commission ("SEC") has promulgated Rule 12b-1, 17 C.F.R. § 270.12b-1, to regulate the "[d]istribution of shares by [a] registered . . . investment company."

   8. Before the SEC enacted Rule 12b-1, it generally was unlawful for a registered investment company to directly or indirectly finance the distribution of its shares. A fund could not use its assets to pay for activity intended to generate sales of its shares, such as advertising; compensation of underwriters, dealers, and sales personnel; printing and mailing prospectuses to prospective shareholders; and printing and mailing sales literature.

   9. In enacting Rule 12b-1 and allowing funds to pay distribution expenses from fund assets, the SEC intended that a plan implemented in conformity with Rule 12b-1 would result in a larger fund with more shareholders and economies-of-scale benefits to the fund and its shareholders. Rule 12b-1 thus requires that a distribution plan be implemented and continued only if it "will benefit the company and its shareholders." A fund and its shareholders should benefit from a reduction in advisory fees that exceeds the distribution expenses assumed. Proper evaluation of the relative benefit to a fund and its shareholders is based on the extent to which per-share savings

are realized as a result of the distribution effort. Economies of scale are achieved by reducing per-share expense in the advisory fee.

10. To ensure that a fund and its shareholders realize economies of scale, Rule 12b-1 imposes on the directors of a fund duties in implementing and continuing a distribution plan. In particular, "the directors of such company shall have a duty to request and evaluate, and any person who is a party to any agreement with such company relating to such plan shall have a duty to furnish, such information as may reasonably be necessary to an informed determination of whether such plan should be implemented or continued; in fulfilling their duties . . . the directors should consider and give appropriate weight to all pertinent factors." A fund "may implement or continue a plan . . . only if the directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b) . . . of the [ICA], that there is a reasonable likelihood that the plan will benefit the company and its shareholders."

11. Defendant voted to implement and continue a distribution plan for the Fund pursuant to which AIM Distributors, Inc. ("AIM Distributors") serves as the distributor of the Fund and receives from the Fund a distribution fee equal to a percentage of the net asset value of the Fund.

12. The distribution fees paid by the Fund to AIM Distributors under the distribution plan are entirely a waste of fund assets. Specifically:

a. The distribution fees are based on the net asset value of the Fund and not on distribution activity, if any, by AIM Distributors, such as number of fund shares sold. Consequently, a significant portion of the fees paid to AIM Distributors is derived from market increases in the net asset value of the Fund, independent of any distribution activity by AIM Distributors. This portion

of the fees is a waste of fund assets.

   b. The distribution fees did not result in reduced advisory fees, and any reduction in advisory fees did not exceed the distribution fees assumed by the Fund and its shareholders. Therefore, the distribution fees are a waste of fund assets.

   c. The distribution fees paid by the Fund to AIM Distributors have increased significantly from 1995 to 2000. Despite the increase in distribution fees, the advisory fee per share of the Fund did not decrease, as it should have. Instead, the advisory fee per share increased from $0.11 per share in 1995 to $0.26 per share in 2000, an increase of 136%. The distribution fees have produced no economies-of-scale benefits to the shareholders of the Fund; they violate Rule 12b-1; and they are a waste of Fund assets.

   13. Therefore, Defendant could not have requested and evaluated all information that was reasonably necessary to an informed determination of whether to implement or continue the distribution plan; could not have considered and given appropriate weight to all factors pertinent to the determination of whether to implement or continue the distribution plan; and could not have concluded, in the exercise of reasonable business judgment and in light of his fiduciary duty to the Fund and its shareholders, that the distribution plan is reasonably likely to benefit the Fund and its shareholders.

## CLASS ACTION ALLEGATIONS

   14. Pursuant to Rules 23(a), 23(b)(1)(A), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action as a class action on behalf of each Plaintiff and others similarly situated. As the requirements of Rules 23(a), 23(b)(1)(A), 23(b)(2), and 23(b)(3) are satisfied, Plaintiffs seek certification of a class of all shareholders of the Fund.

*Rule 23(a)*

15. The class consists of the thousands of shareholders of the Fund and is so numerous that joinder of all members is impracticable.

16. There are questions of law and fact common to the class, including:

    a. Whether the distribution fees are a waste of fund assets;

    b. Whether Defendant violated Section 12(b) of the ICA;

    c. Whether Defendant's conduct has proximately caused damage to the members of the class; and

    d. Whether Defendant's conduct merits declaratory and injunctive relief.

17. Plaintiffs' claims are typical of the claims of the other class members. Plaintiffs have sustained damages in the same capacity as all members of the class, i.e., as shareholders of the Fund. Further, Plaintiffs and all class members have sustained damages as a result of the same wrongful conduct of Defendant.

18. Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs' interests are the same as and are not in conflict with the interests of the class, and Plaintiffs have retained counsel competent and experienced in class action litigation.

*Rule 23(b)(1)(A)*

19. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant.

*Rule 23(b)(2)*

20. Defendant has acted and refused to act on grounds generally applicable to the

class. Defendant unlawfully voted to implement and continue the distribution plan pursuant to which wasteful payments were made from assets of the Fund, of which all members of the class are shareholders. Therefore, declaratory relief and injunctive relief are appropriate with respect to the class as a whole.

*Rule 23(b)(3)*

21. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members. Therefore, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### ICA Section 12(b)

22. Plaintiffs adopt by reference paragraphs 1 through 21 of this complaint.

23. Defendant breached the duty to the Fund and its shareholders imposed by Section 12(b) of the ICA.

24. Due to Defendant's breach of duty, the Fund made payments under the distribution plan that are entirely a waste of Fund assets.

WHEREFORE, Plaintiffs demand that the Court:

a. Enter an order declaring that this is a proper class action and may be so maintained on behalf of the shareholders of the Fund;

b. Declare that Defendant breached the duty imposed by Section 12(b) of the ICA;

c. Declare that Defendant is liable for all monies paid by the Fund under or by reason of the distribution plan;

    d.    Enter judgment against Defendant for all monies paid by the Fund under or by reason of the distribution plan, plus interest, costs, and attorney's fees; and

    e.    Enter such other relief the Court deems proper.

> CARR, KOREIN, TILLERY, KUNIN,
> MONTROY, CATES, KATZ & GLASS, LLC
>
> *[signature]*
> Steven A. Katz
> Diane Moore Heitman
> 10 Executive Woods Court
> Belleville, Illinois 62226
> Tel: (618) 277-1180
> Fax: (618) 277-9804