**FILED** *am*

MAR 0 8 2002

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINO:
EAST ST. LOUIS OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD NELSON, | ) |
| DOROTHY NELSON, | ) |
| KENNETH A. GILLEY, | ) |
| JUDITH GILLEY, | ) |
| ANNE MARIE KERN-TAYLOR, | ) |
| FRANKLIN H. MEYERS, | ) |
| LOIS MEYERS, | ) |
| JO ELLEN BRADY, | ) |
| PAUL QUIGLEY, | ) |
| MELVIN W. SCHARF, | ) Case No.  01-cv-0282-MJR |
| JODEE FAVRE, | ) |
| GREGORY C. STEPP, | ) |
| WILMA J. GASTON, | ) |
| BARBARA ERB, | ) |
| DAN McGINNIS, | ) |
| PAMELA McGINNIS, | ) |
| LOUIS TAYLOR, as Trustee for | ) |
|     Bergmann-Taylor Profit Sharing | ) |
|     Plan | ) |
| DOLOROS EPPING, | ) |
| JOHN SMETANA, | ) |
| STEVEN G. WICKS, | ) |
| STEPHEN STOVEY, | ) |
| | ) |
|       Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| AIM ADVISORS, INC., | ) |
| AIM DISTRIBUTORS INC., | ) |
| AMERICAN EXPRESS FINANCIAL | ) |
|     CORP., | ) |
| AMERICAN EXPRESS FINANCIAL | ) |
|     ADVISORS INC., | ) |
| DAVIS SELECTED ADVISERS LP, | ) |
| DAVIS DISTRIBUTORS LLC, | ) |
| DELAWARE MANAGEMENT CO., | ) |
| DELAWARE DISTRIBUTORS LP, | ) |
| DREYFUS CORP., | ) |
| DREYFUS SERVICE CORP., | ) |

1

*223*

EVERGREEN INVESTMENT                )
    MANAGEMENT CO. LLC,          )
EVERGREEN INVESTMENT                )
    SERVICES INC.,                       )
FRANKLIN ADVISERS INC.,             )
FRANKLIN TEMPLETON                  )
    DISTRIBUTORS INC.,               )
GOLDMAN SACHS ASSET                 )
    MANAGEMENT,                      )
GOLDMAN SACHS & CO. INC.,           )
INVESCO FUNDS GROUP INC.,           )
INVESCO DISTRIBUTORS INC.,          )
JOHN HANCOCK FUNDS INC.,            )
LORD ABBETT & COMPANY,              )
LORD ABBETT DISTRIBUTOR LLC,        )
NEW YORK LIFE INVESTMENT            )
    MANAGEMENT LLC,                  )
NYLIFE DISTRIBUTORS INC.,           )
FUND ASSET MANAGEMENT LP,           )
FAM DISTRIBUTORS INC.,              )
MASSACHUSETTS FINANCIAL             )
    SERVICES COMPANY,                )
MFS FUND DISTRIBUTORS INC.,         )
MORGAN STANLEY DEAN WITTER          )
    ADVISORS INC.,                   )
MORGAN STANLEY DEAN WITTER          )
    DISTRIBUTORS INC.,               )
OPPENHEIMER FUNDS INC.,             )
OPPENHEIMER FUNDS                   )
    DISTRIBUTOR INC.,                )
PIMCO ADVISORS,                     )
PIMCO FUNDS DISTRIBUTOR LLC,        )
PRUDENTIAL INVESTMENTS FUND         )
    MANAGEMENT LLC,                  )
PRUDENTIAL INVESTMENT               )
    MANAGEMENT SERVICES,             )
PUTNAM INVESTMENT                   )
    MANAGEMENT LLC,                  )
PUTNAM RETAIL                       )
    MANAGEMENT LP,                   )
J. AND W. SELIGMAN & CO INC.,       )
SELIGMAN ADVISORS INC.,             )

SMITH BARNEY FUND                        )
    MANAGEMENT LLC,                  )
SALOMON SMITH BARNEY INC.,               )
SUNAMERICA ASSET                         )
    MANAGEMENT CORP.,                )
SUNAMERICA CAPITAL SERVICES              )
    INC.,                            )
TEMPLETON GLOBAL ADVISORS                )
    LIMITED,                         )
VAN KAMPEN ASSET                         )
    MANAGEMENT, and                  )
VAN KAMPEN FUNDS INC.                     )
                     )
    Defendants.                      )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

## I. Introduction

    On May 7, 2001, Plaintiffs filed a complaint in this Court on behalf of themselves and those similarly situated. Named plaintiffs are 21 Illinois residents who are investors and shareholders in 51 various mutual funds sold and distributed by 48 investment advisor and fund distributor Defendants (or 24 sets of advisor/distributor pairs). Although no formal motion has been filed yet, Plaintiffs seek certification of a nationwide class consisting of millions of mutual fund shareholders; specifically 24 classes of all shareholders in all funds found in each of 24 fund "families" or "complexes" into which 1,206 mutual funds have been broken down.

    In summary, Plaintiffs allege Defendants engaged in unlawful control of the directors of the funds (who are required to be independent), entered into unlawful distribution plans and agreements, and charged and received unlawful and excessive distribution and advisory fees from the fund. Specifically, Plaintiffs allege violations of the Investment Company Act of 1940 ("ICA

3

Act"), **15 U.S.C. §80a-12(b) and §80(a)-36(b)** in Counts I and II and breach of common law fiduciary duty in Count III.  Plaintiffs seek recovery of all investment advisory fees and all distribution fees paid by the 1,206 mutual funds since May 1, 1991, punitive damages, declaratory relief, future specific performance, costs, interest, and attorneys' fees.

Now pending before the Court are 14 motions to sever and 17 motions to transfer pursuant to **28 U.S.C. § 1404(a)** filed by various Defendant groups.  The Court held a hearing on these motions on December 10, 2001, took the matter under advisement, and imposed a stay in the case until resolution of the severance and transfer issues.  For the reasons stated herein, the Court lifts the stay, grants Defendants' motions, and severs and transfers accordingly.

## II. **Defendants' Motions to Sever**

Defendants' motions to sever pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 21** raise the same basic argument - that Plaintiffs' second amended complaint fails to satisfy the requirements of **Rule 20(a)** for permissive joinder of multiple defendants.

**Rule 20(a)** contains two requirements: (1) that the claims for relief against each defendant are "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" *and* (2) that a "question of law or fact common to all these persons will arise in the action." *Mosley v. GMC*, **497 F.2d 1330, 1334 (8ᵗʰ Cir. 1974)**.  However, this does not require that *every* question of law or fact be common to all.  *Id.*  If claims have been "misjoined," the court is authorized under **Rule 21** to sever the claims against the different defendants and proceed with them separately.  The trial judge has broad discretion in determining when severance is appropriate.  *Thompson v. Boggs*, **33 F.3d 847, 858 (7ᵗʰ Cir. 1994)**.

Defendants argue that Plaintiffs' claims for relief do not arise out of the same

4

transaction or occurrence because each mutual fund enters into *separate* contracts with its own advisor and distributor which set forth the nature of the services to be provided by that particular advisor and distributor and the specific fees to be paid for such service. In other words, none of the Defendant pairs have a relationship, contractual or otherwise, with any other pair of Defendants. Each pair advises and manages the funds involved inside its own complex and does not manage or advise any of the funds of other complexes. As such, each Defendant pair makes their own separate and different decisions in running the fund.

Defendants further point out that since none of the contracts applies to funds in more than one complex, Plaintiffs could not and did not allege any factual connection between the contract agreements, fees, or directors in the different complexes, and no evidence regarding fees or services would be admissible against any other Defendant. Therefore, each fund will have to be analyzed separately to determine whether the fees were excessive. Accordingly, Defendants' contend Plaintiffs' claims for "control over the directors" and claims for "excessive fees" do not share a common question of law or fact and do not satisfy the first requirement under **Rule 20(a)**.

Defendants also argue that Plaintiffs' claims do not involve a question of law or fact common to all Plaintiffs. Defendants assert that although Plaintiffs pursue similar theories under the ICA against each group of Defendants, this does not create a common issue of law or fact because different contracts apply to each pair of Defendant advisor and distributor. Therefore, Plaintiffs have not satisfied the second requirement under **Rule 20(a)**.

In short, Defendants argue that the only common factor among the claims brought against the numerous Defendant groups in this case is that they are each investment advisors or distributors of mutual funds. Therefore, there is no basis for joining them as Defendants in a single

"mega-lawsuit" and severance is proper under **Rule 21**.  The Court agrees.

The spirit underlying the permissive joinder doctrine is to promote efficiency, convenience, consistency, and fundamental fairness.  *Intercon v. Research, Etc. v. Dresser Industries*, **696 F.2d 53, 57-58 (7ᵗʰ Cir. 1994).**  These principles, not a bright-line rule, should govern whether the "same transaction" requirement imposed by **Rule 20** has been satisfied.  *See* **4 James Wm. Moore et al.,** *Moore's Federal Practice* § **20.05(1) (3ʳᵈ ed. 1999).**  Therefore, courts should evaluate this issue on a case-by-case basis rather than developing a single test.  *See* **7 C. Wright et al.,** *Federal Practice and Procedure* § **1653 at 382 (2ⁿᵈ ed. 1986).**

Although this Court chooses to evaluate this issue in an independent manner keeping these principles in mind, the Court finds guidance from a fellow district court within the Seventh Circuit which examined the issue of joinder within the context of securities fraud lawsuits which this Court finds are analogous to the case at bar.

> **Problems associated with the "same transaction" requirement have arisen often in the context of securities fraud lawsuits involving multiple plaintiffs.  The general consensus that emerges from these cases is that Rule 20 demands *more than the bare allegation that all plaintiffs are victims of a fraudulent scheme perpetrated by one or more defendants; there must be some indication that each plaintiff has been induced to act by the same misrepresentation.*** *Compare Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1100 (5ᵗʰ Cir.1973) (addition of second plaintiff in securities fraud lawsuit satisfied Rule 20(a) because claims of each plaintiff were based on series of false statements made by same defendant to both plaintiffs so that facts of claims "were inextricably woven together") with *Papagiannis v. Pontikis*, 108 F.R.D. 177, 179 (N.D. Ill.1985) (two plaintiffs could not be joined in same securities action against same defendant even though both claims involved scheme to sell interest in unprofitable oil wells; defendant implemented scheme in separate encounters, each of which necessarily controlled by individualized proof) and *McLernon v. Source International, Inc.*, 701 F.Supp. 1422, 1425-26 (E.D. Wis.

6

> 1988)(several hundred individual plaintiffs fraudulently induced into purchasing unregistered securities could not join in same action without amending their complaint to identify a specific fraudulent statement or statements that had reached all plaintiffs; misrepresentations set forth in original complaint emanated from many different sources).

*Insolia v. Philip Morris Incorp.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999)(emphasis added).

With these principles in mind, the Court finds that Plaintiffs' claims do not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as required under **Rule 20**. Although Plaintiffs' claims against all Defendants are pled under the same legal theory, it is only in this abstract sense that Plaintiffs' claims share anything in common. On the immediate and practical level which governs the application of **Rule 20**, Plaintiffs' claims against each Defendant pair are based upon contracts specific to that pair and no other. Therefore, each contract and the duties imposed upon each Defendant pair must be analyzed separately. The fact that Plaintiffs have made claims against each Defendant under identical federal statutory provisions does not mean that there are common issues of law and fact sufficient to satisfy **Rule 20(a)**. *Randleel v. Pizza Hut of America, Inc.*, 182 F.R.D. 542, 543 (N.D. Ill. 1998).

Furthermore, the practical implications of allowing these claims to go forward suggest that joinder would not serve the policies underlying **Rule 20**. In order to eliminate prejudice, avoid massive confusion, and to promote judicial efficiency and order, this Court exercises its discretion under **Rule 21** and severs Plaintiffs' claims against the various Defendant pairs as Defendants' motions request. *See Randleel*, 182 F.R.D. at 545.

### III. Defendants' Motions to Transfer

Defendants next move for the transfer of their cases to other, more appropriate,

jurisdictions pursuant to **28 U.S.C. § 1404(a)**.

> **28 U.S.C. § 1404(a)** provides:
>
> > For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

To prevail on a **§ 1404(a)** motion, the movant must demonstrate: (1) that venue is proper in the transferor district; (2) that venue *and* jurisdiction are proper in the transferee district; and (3) that the transfer will serve the convenience of the parties and witnesses and promote the interest of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7ᵗʰ Cir. 1986). The weight to be accorded each of these factors lies in the discretion of the trial judge. *Wysnoski v. Millet*, 759 F. Supp. 439, 444 (N.D. Ill. 1991).

The moving party bears the burden of persuading the transferor court that the transferee court is more convenient and that the interest of justice favors a transfer. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7ᵗʰ Cir. 1989); *General Electric Capital Auto v. Phil Smith Chrysler Plymouth, Jeep Eagle*, – F. Supp. 2d –, 2000 WL 1471615 (N.D. Ill. Oct. 2, 2000); *Goodin v. Burlington Northern Railroad Co.*, 698 F. Supp. 157, 158 (S.D. Ill. 1988).

Other principles guide a court's consideration of a **§ 1404(a)** transfer motion as well. For instance, in determining whether to grant **§ 1404(a)** transfer, the court must seek to promote the efficient administration of justice and not merely the private interests of the parties. *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999). Additionally, as a general rule, a plaintiff's choice of forum is entitled to substantial deference. However, where a plaintiff alleges a nationwide class action, "plaintiff's home forum is irrelevant." *Koster v. Lumbersmen Mut. Cas. Co.*, 330 U.S. 518,

8

524 (1947); *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997).

In the case at bar, all parties agree that the first element required for a **§ 1404(a)** transfer has been satisfied - that venue is proper in this district, the transferor district.

In determining whether "venue and jurisdiction are proper in the transferee district," this Court must examine: a) the plaintiffs' choice of forum; b) the situs of material events; c) the relative ease of access to sources of proof in each forum, including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, and d) the convenience to the parties – specifically, their respective residence and abilities to bear the expenses of trial in a particular forum. *Von Holdt v. Husky Injection Molding Sys.*, **887 F. Supp. 185, 188 (N.D. Ill. 1995)**.

As stated above, the Court finds Plaintiffs' choice of forum to be irrelevant. Therefore, the Court focuses on the remaining three elements in determining whether venue and jurisdiction are proper in each of the transferee districts to which the various Defendants seek transfer.

With one exception addressed later, each Defendant seeks transfer to the district in which they are headquartered and in which they manage the mutual funds at issue in this case. In support of these motions for transfer, each Defendant has demonstrated by Affidavit that: (1) all material facts surrounding the management of the various mutual funds occurred in the district to which they seek transfer; (2) that all of the numerous potential witnesses live in or within close proximity to the district to which they seek transfer; (3) that all of the documents relevant to the litigation are in or within close proximity to the district to which they seek transfer; and (4) since there has been no allegation that any individual Plaintiff interacted with any of the Defendant

advisors or distributors in any direct way, that no material witnesses live or reside in the Southern District of Illinois.

Defendants have also sufficiently proven that there is relative ease of access to sources of proof in the various districts to which they seek transfer, but no ease of access to such documents in the Southern District of Illinois. Again, since all documentation regarding these mutual funds and the way they are run is kept at and around the various Defendant headquarters, there would be no access to such documents within this district. Moreover, requiring Defendants to produce such documentation in this district would be very costly and impose undue hardship.

Furthermore, it is clear that the courts to which Defendants seek transfer have infinitely more power than this Court to compel the appearance of unwilling witnesses at trial since all of the witnesses reside in or within close proximity to the transferee districts. Moreover, the costs of compelling the attendance of witnesses would be less since the witnesses reside in or are closer to the transferee districts. All in all, it would simply be much more convenient for the witnesses to be heard in the transferee districts.

Based upon these factors, it is clear that venue and jurisdiction are proper in the transferee districts and that Defendants have satisfied the second factor required for a **§ 1401(a)** transfer.

The evidence regarding the second factor under **§ 1401(a)** dovetails with the evidence regarding the third factor - that transfer will serve the convenience of the parties and witnesses and promote the interest of justice or the "clearly more convenient" standard. ***Coffey*, 796 F.2d at 220.** There is no question that Defendants have proven that the transferee district would be more convenient for the majority, if not all, of the witnesses. Although transfer may require Plaintiffs to

10

travel to the transferee district, it is "clearly more convenient" for any of the individual plaintiffs to travel from this district to the transferee district, than for a plethora of witnesses to travel to the Southern District of Illinois on each individual Plaintiff's case.

Analysis under this final **§ 1404(a)** factor also requires the Court to consider certain other elements relating to public interest. These include: (a) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving controversies in their locale; (b) the court's familiarity with applicable law; and (c) the congestion of the respective court dockets and the prospect for earlier trial. ***Georgouses*, 963 F.Supp. at 730.** In undertaking this analysis, the Court finds that although there are certainly putative class members in the Southern District of Illinois, as there are nationwide, there is no special relation between this community and the alleged occurrences. Therefore, there is no specific desire or need to resolve this controversy in this district as compared to the clearly more convenient transferee districts.

Similarly, the Court finds that any district court would be as familiar as this Court is with the applicable law governing this case.

The Court also finds that no delay would result from transferring these cases to the various transferee districts. For example, the median number of months from filing to disposition is better in the Southern District of New York, to which the majority of Defendants seek transfer, than it is in the Southern District of Illinois. *See **www.uscourts.gov** **(2000)(5.2 months in the S.D.N.Y versus 8 months in the S.D.IL.).**[1]

Based upon all of these considerations, the Court finds it is "clearly more convenient"

---

[1]     Plaintiffs' cited statistics regarding this Court's caseload, but were cautioned at oral argument that their numbers were stale. According to the latest official statistics released on January 31, 2002, this Court had 859 assigned pending cases.

11

for the various cases to be transferred than to be heard in this district. Given the fact that the overwhelming number of witnesses and documents are located in the transferee district, as well as the fact that Plaintiffs have offered no reason why Defendants should bear the greater legal cost of transporting documents, counsel, and witnesses to the Southern District of Illinois in order to defend against Plaintiffs' as yet unproven allegations, this Court finds that Defendants have sustained their burden of demonstrating that transfer of these cases is appropriate and warranted under **§ 1404(a)**. ***See Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 621 F. Supp. 780 (N.D. Ill. 1985).***

The only exception to this ruling relates to the motion for transfer to the Southern District of New York filed by Defendants, Aim Advisors, Inc., Aim Distributors, Inc., Franklin Advisors, Inc., Franklin Templeton, Templeton Global Advisors, Invesco Funds Group, Inc., and Invesco Distributors, Inc. (a portion of Doc. 48). As the motion relates to these Defendants only, the motion is ***granted in part and denied in part***.[2]

Although the Court finds that transfer from this district is appropriate, the Court will not transfer the cases against Defendants, Aim Advisors, Inc., Aim Distributors, Inc., Franklin Advisors, Inc., Franklin Templeton, Templeton Global Advisors, Invesco Funds Group, Inc., and Invesco Distributors, Inc., to the Southern District of New York as they have requested. To do so would only accomplish having the cases against these Defendants tried in another district as disconnected to the litigation as this one. Regardless of these Defendants' willingness to travel to the Southern District of New York, the Court will transfer these cases to the districts where each

---

[2] The motion is ***granted in its entirety*** as it relates to Defendants, J. & W Seligman and Seligman Advisors, since these Defendants have demonstrated that they are headquartered in New York City, the material events giving rise to the claims against them occurred in New York City, and virtually all of the relevant witnesses and documents are in New York City.

12

Defendant is headquartered, where the corporate witnesses reside, and where the corporate documents are.

Accordingly, the Court *transfers* Defendants Aim Advisors, Inc. and Aim Distributors, Inc. to the Southern District of Texas where they are headquartered; *see* www.aimfunds.com/aboutus/index.html; Defendants Franklin Advisors. Inc., Franklin Templeton, and Templeton Global Advisors to the Northern District of California where they are headquartered; *see* www.franklintempleton.com; and Defendants Invesco Funds Group, Inc. and Invesco Distributors. Inc. to the District of Colorado where they are headquartered; *see* www.invescofunds.com/AboutINVESCO/WhoWeAre.asp.

## IV. Conclusion

For the reasons stated herein, the Court **LIFTS THE STAY, GRANTS** Defendants' motions to sever (Docs. 39, 46, 67-1, 71-1, 75-1, 79-1, 83-1, 87-1, 90, 107, 125, 131, 136, & 155) and **GRANTS** Defendants' motions to transfer (Docs. 41, 44, 50, 67-2, 71-2, 75-2, 79-2, 83-2, 87-2, 92, 94, 105, 127, 133, 138, & 156) **EXCEPT** Defendants Aim Advisors Inc., Aim Distributors Inc., Franklin Advisors. Inc., Franklin Templeton, Templeton Global Advisors, Invesco Funds Group, Inc., and Invesco Distributors, Inc.'s motion to transfer which is **GRANTED IN PART and DENIED IN PART as explained above (Doc. 48). Defendants J. and W. Seligman and Seligman Advisors' part of the motion (Doc. 48) is GRANTED IN ITS ENTIRETY. Accordingly, the Court TRANSFERS** the cases against the various Defendants as follows:

    **• to the Southern District of New York:**
    - Dreyfus Corp.,
    - Dreyfus Service Corp.,
    - Smith Barney Fund,
    - Salomon Smith Barney,

- SunAmerica Asset Mgt.,
- SunAmerica Capital (Doc. 41),

- J. and W. Seligman,
- Seligman Advisors (Doc. 48),

-NY Life Distributor, Inc.
-NY Life Investment Mgt. LLC (Doc. 87-2)

-Morgan Stanley Dean Witter Advisors, Inc.
-Morgan Stanley Dean Witter Distributors, Inc. (Doc. 133)

-Goldman Sachs & Co., Inc.,
-Goldman Sachs Asset Mgt. (Doc. 156)

**• to the District of New Jersey:**
-Fund Asset Mgt. LP,
-FAM Distributors, Inc.,
-Prudential Investment,
-Prudential Investment Mgt. (Doc. 44)

-Lord Abbett Distributor LLC
-Lord Abbett & Co. (Doc. 79-2)

**• to the District of Massachusetts:**
-Putnam Investment
-Putnam Retail Mgt. (Doc. 50)

-Evergreen Investment Services
-Evergreen Investment Mgt. Co.. LLC (Doc. 71-2)

-John Hancock Funds, Inc.
-John Hancock Advisors, Inc. (Doc. 75-2)

-MFS Fund Distributors, Inc.
-Massachusetts Financial Services Co. (Doc. 83-2)

**• to the District of Arizona:**
-Davis Distributors, LLC
-Davis Selected Advisors, LP (Doc. 67-2)

14

**• to the District of Minnesota:**
-American Express Financial Corp.
-American Express Financial Advisors, Inc. (Doc. 92)

**• to the Central District of California:**
-PIMCO Advisors
-PIMCO Funds Distributor LLC (Doc. 94)

**• to the Northern District of California:**
- Franklin Advisors. Inc.,
- Franklin Templeton,
- Templeton Global Advisors (Doc. 48)

**• to the Eastern District of Pennsylvania:**
-Delaware Distributors, LP
-Delaware Mgt. Co. (Doc. 105)

**• to the District of Colorado:**
-Oppenheimer Funds Distributor, Inc.
-Oppenheimer Funds, Inc. (Doc. 127)

- Invesco Funds Group, Inc.,
- Invesco Distributors, Inc. (Doc. 48)

**• to the Northern District of Illinois:**
-Van Kampen Asset Mgt.
-Van Kampen Funds, Inc. (Doc. 138)

**• to the Southern District of Texas:**
- Aim Advisors Inc.,
- Aim Distributors Inc.


**IT IS SO ORDERED.**

**DATED this** _____ **day of March, 2002.**


_____
**MICHAEL J. REAGAN**
**United States District Judge**